2008 OK 47

**BED BATH & BEYOND, INC., and Fidelity Guaranty Insurance Company, Petitioners,**

v.

**Rebecca Ann BONAT and the Workers' Compensation Court, Respondents.**

No. 104,284.

Supreme Court of Oklahoma.

May 13, 2008.

As Corrected May 19, 2008.

Todd A. Estes, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, OK, for Petitioners.

Lynn Barnett, Oklahoma City, OK, for Respondent.

COLBERT, J.

¶ 1 Certiorari review of this matter was granted to address a first impression issue concerning a patent ambiguity contained in a 2005 amendment to section 22 of the Workers' Compensation Act concerning the length of time a temporarily and totally disabled worker is entitled to disability benefits for a "soft tissue" injury. Today, this Court construes that ambiguity, applies section 22 to the claim presented in this matter, and determines that the Workers' Compensation Court correctly determined the length of time that the worker was entitled to temporary total disability and medical care. In addition, this Court finds that competent medical evidence supports the Workers' Compensation Court's determination that the worker sustained a compensable work-related injury.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Rebecca Bonat (Claimant) sought workers' compensation benefits alleging injuries to her back while working for Bed Bath & Beyond, Inc., (Employer) on October 26, 2001, January 6, 2004, and July 14, 2005. Employer provided necessary medical treatment and paid temporary total disability (TTD) beginning July 22, 2005.

¶ 3 In an order dated July 20, 2006, the trial court designated Dr. Hahn as Claimant's treating physician. Dr. Hahn initially treated Claimant conservatively but later recommended surgery. When Employer refused to authorize the recommended surgery, Claimant sought an adjudication of her need for additional medical treatment.

¶ 4 At the hearing, the medical evidence was focused on whether Claimant's employment was the major cause of the injury to the disks in her lumbar back. Dr. Hahn was unable to determine whether the major cause

of Claimant's injury was her employment or the back condition for which Claimant had undergone laser surgery in 1996. Another doctor, Claimant's examining physician/expert, attributed the major cause to her employment while Employer's examining physician/expert attributed it to degenerative disk disease dating to 1996.

¶ 5 The trial court found that, "as a result of cumulative trauma, [C]laimant sustained accidental personal injury to the LUMBAR BACK (AGGRAVATION OF A PRE–EXISTING CONDITION) arising out of and in the course of [the] employment." Claimant was awarded additional medical treatment and TTD from July 22, 2005, and continuing for not more than 156 weeks except for good cause shown. A three-judge panel affirmed the award. A divided panel of the Court of Civil Appeals sustained the decision holding that (1) Claimant had presented competent evidence that her injury arose out of and in the course of her employment and (2) Claimant was entitled to 156 weeks of TTD as provided by section 22(2)(c) and up to 300 weeks for good cause shown, because her claim was not subject to the "soft tissue injury" limitation found at section 22(3)(d).[1]

## ANALYSIS

 ¶ 6 The construction of an ambiguous statute presents an issue of law. As such, it is reviewed de novo. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Whether the evidence supports an award of compensation presents an issue of fact. By stare decisis, the "any competent evidence" test applies to that determination. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 552.

## 2005 AMENDMENTS TO SECTION 22

¶ 7 In 2005, the Oklahoma Legislature enacted emergency legislation concerning workers' compensation in a special session. 2005 Okla. Sess. Laws 2239. That legislation included extensive amendments to the Workers' Compensation Act (Act). Okla. Stat. tit. 85, §§ 1 through 211 (2001 & Supp.2007).

Amendments to section 22 control the first impression issue in this matter.

¶ 8 In section 22(2)(c), the Legislature retained the provision that "[w]ith respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate except for good cause shown, as determined by the Court." The 2005 amendments, however, added another sentence stating that "[t]otal payments of compensation for temporary total disability, inclusive of consequential injuries, may not exceed a maximum of three hundred (300) weeks in the aggregate."

¶ 9 Another amendment, found at section 22(3)(d), defines "soft tissue injury" and provides for medical treatment and temporary total disability payments for such injury. It provides:

Soft Tissue Injury: In case of a nonsurgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks. A claimant who has been recommended by a treating physician for surgery for a soft tissue injury may petition the Court for one extension of temporary total compensation and the court may order such an extension, not to exceed sixteen (16) additional weeks, if the treating physician indicates that such an extension is appropriate or as agreed to by all parties. In the event the surgery is not performed, the benefits for the extension period shall be terminated. For purposes of this section, "soft tissue injury" means damage to one or more of the tissues that surround bones and joints. "Soft tissue injury" includes, but is not limited to: sprains, strains, contusions, tendonitis, and muscle tears. Cumulative trauma is to be considered a soft tissue injury. "Soft tissue injury" does not include any of the following:

(1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed;

---

1. A third issue was raised concerning whether the claim should have been properly viewed as cumulative trauma or a series of single event injuries. The issue was not raised in Employer's petition for certiorari and therefore it will not be addressed in this opinion.

. . . .

In all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 of this section, unless there is objective medical evidence of a permanent anatomical abnormality. In determining the existence of such an abnormality, the Court may consider if there is credible medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired.

Okla Stat. tit. 85, § 22(3)(d) (Supp.2007). This provision purports to limit TTD for non-surgical soft tissue injuries to eight weeks. If surgery has been recommended, an extension of up to an additional sixteen weeks may be granted by the Workers' Compensation Court. Ambiguity arises, however, because the soft tissue injury provision found at section 22(3)(d) states that "[i]n all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 of this section . . . ." Thus, the text of the soft tissue injury provision specifically refers back to the 156 week and 300 week time limits set for TTD by section 22(2)(c) for injuries occurring on or after November 1, 1997.

¶ 10 This patent ambiguity has led at least three divisions of the Court of Civil Appeals to permit an award of benefits exceeding 24 weeks in at least four soft tissue injury cases including this matter. *See Curling v. City Chevrolet,* 2007 OK CIV APP 63, 164 P.3d 1141; *Sysco Food Servs. of Okla. L.L.C. v. Cunningham,* 2007 OK CIV APP 52, 162 P.3d 973; *Gee v. All 4 Kids, Inc.,* 2006 OK CIV APP 155, 149 P.3d 1106. The divisions, however, have taken very different approaches to reaching these decisions. Therefore, this Court provides this analysis as binding authority for resolution of the ambiguity.

 ¶ 11 "It is a quintessential function of any court of last resort to interpret ambiguous statutes and thereby resolve actual justiciable controversies before it." *Cox v. Dawson,* 1996 OK 11, ¶ 7 n. 11, 911 P.2d 272, 277 n. 11. "[T]he cardinal rule of statutory construction is to ascertain the intent of the legislature and if possible give effect to all its provisions." *Kratz v. Kratz,* 1995 OK 63, ¶ 11, 905 P.2d 753, 755. "A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless." *Moran v. City of Del City,* 2003 OK 57, ¶ 8, 77 P.3d 588, 591.

 ¶ 12 "Soft tissue injury" is defined as "damage to one or more of the tissues that surround bones and joints. [It] includes, but is not limited to: sprains, strains, contusions, tendonitis, and muscle tears." Okla. Stat. tit. 85, § 22(3)(d) (Supp.2007). It is clear that the Legislature intended to limit the period of TTD for certain soft tissue injuries. Section 22(3)(d) limits benefits to eight weeks for non-surgical soft tissue injuries. If surgery is recommended, a claimant may receive court approval for an additional period of up to sixteen weeks in which the surgery may be performed on the soft tissue. Section 22(3)(d) is silent as to the period of time TTD and medical benefits are to be provided when surgery to the soft tissue is performed. Therefore, such an injury is subject to the limits imposed generally on TTD found at section 22(2)(c) which permit a maximum of 156 weeks of TTD and medical benefits and up to 300 weeks for good cause shown.

¶ 13 Section 22(3)(d) also contains an exclusion from the definition of "soft tissue injury." That section provides: " 'Soft tissue injury' does not include any of the following: (1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, *where corrective surgery is performed." Id.* (emphasis added). Thus, "where corrective surgery is performed" to the "spine, spinal disks, spinal nerves or spinal cord," the injury is by definition not a "soft tissue injury" and it is not subject to the TTD time limits of section 22(3)(d). Rather, it is controlled by the time limits stated in section 22(2)(c).

 ¶ 14 In this matter, the surgery recommended by Claimant's treating physician was to the spinal disks in her lumbar back. Thus, the corrective surgery to her spinal disks excludes her injury from the definition of "soft tissue injury" and her claim is con-

trolled by the time limitations found at section 22(2)(c). The recommended surgery would have been performed but for the fact that Employer has refused to authorize it.

¶ 15 The question becomes whether an employer can subject a claim to the time limits imposed for a soft tissue injury merely by withholding its authorization for the surgery recommended by the treating physician and thereby redefining the injury. This Court finds no legislative intent to give an employer the ability to in effect define the injury as "soft tissue" by its refusal to authorize the recommended surgery. Where corrective surgery would have actually been performed, absent the employer's refusal to authorize the recommended surgery, the TTD and medical time limits of section 22(3)(d) are inapplicable and the time limits imposed by section 22(2)(c) apply.

¶ 16 Employer has withheld and continues to withhold its authorization pending the outcome of this appeal. The refusal to authorize the recommended surgery does not operate to artificially force Claimant's injury into the definition of "soft tissue injury." The presence of a soft tissue injury is a medical question to be determined by the Workers' Compensation Court based on competent medical evidence, not on an employer's decision to authorize or refuse to authorize recommended surgery. The claim in this matter is not subject to the soft tissue injury time limitations set forth in section 22(3)(d).

### EVIDENCE OF CAUSATION

¶ 17 Employer asserts that Claimant failed to meet her burden of demonstrating her "employment was the major cause of the specific injury." Okla. Stat. tit. 85, § 3(13)(a) (Supp.2007). Employer reasons that "Dr. Hahn is Claimant's treating physician, and therefore his opinions are controlling." This argument relies solely on the text of section 17(A)(2)(a) which provides that "[t]here shall be a rebuttable presumption in favor of the treating physician's opinions on the issues of temporary disability, permanent disability, causation, apportionment, rehabilitation or

necessity of medical treatment." Okla. Stat. tit. 85, § 17(A)(2)(a) (Supp.2007). Under Employer's view, the fact that the treating physician was unable to express an opinion as to causation requires the conclusion that Claimant has not met her burden of demonstrating that her employment was the major cause of her injury and that her claim is therefore compensable under the Workers' Compensation Act.

¶ 18 The statutory presumption found at section 17(A)(2)(a) was explained in this Court's decision in *Conaghan v. Riverfield Country Day School*, 2007 OK 60, 163 P.3d 557. This Court explained that a presumption is a "procedural tool" which "is not evidence nor does it have evidentiary weight." *Id.* ¶ 11, 163 P.3d at 561. This Court further explained that "[a] presumption is a rule of law compelling a conclusion of fact in the absence of evidence against the conclusion." *Id.* "Under our settled law on presumptions, the statutory rebuttable presumption in favor of the treating physician's opinions does not change the value or weight of the evidence. The rebuttable presumption operates to impose upon the opposing party the duty to offer evidence to the contrary." *Id.* ¶ 13, 163 P.3d at 562.

¶ 19 Claimant met her duty by offering evidence from her expert to establish that her employment was the major cause of her injury. Thus, the order of the Workers' Compensation Court is supported by competent evidence.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

ALL JUSTICES CONCUR.